UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

MATTHEW DAVID COAD

Defendant.

Case No. 1:26-cr-32

Hon. Robert J. Jonker
United States District Judge

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR A DOWNWARD VARIANCE**

## 1. Introduction

Matthew David Coad pleaded guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A. Because the plea agreement with the government required that he agree that he has a prior conviction for violating "the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward…," he is subject to a fifteen-year mandatory minimum sentence.[1] For the reasons set forth in this memorandum, the Court should impose the lowest permissible sentence allowed under the law.

[1] For reasons that will be set forth in the § 3553(a) section below, Mr. Coad did not challenge the government's assertion that his prior conviction qualified for the enhanced penalty here.

**2. Outstanding objections**

As noted in the final presentence report (ECF No. 34), Mr. Coad objects to the 5-level enhancement under U.S.S.G. § 2G2.2(b)(3)(A) for "distributed in exchange for any valuable consideration, but not for pecuniary gain." Defense counsel initially presented this issue as one of sufficiency of the evidence to support it, citing the lack of sufficient, objective evidence supporting the application by a preponderance of the evidence. Following the objection meeting, wherein the probation officer clarified that Mr. Coad's interview was the source of the grounds for the enhancement, Mr. Coad maintained the objection to the enhancement, albeit for different reasons set out below.

There are several reasons why the Court should either reject the application of the enhancement here, or alternatively sentence Mr. Coad as if the enhancement did not apply. Whether framed as an "objection" or a basis for a variance is ultimately immaterial to Mr. Coad.

*a. U.S.S.G. § 2G2.2(b)(3)(A) Objection*

U.S.S.G. § 2G2.2(b)(3) provides for two five level enhancements based upon distribution in exchange for something. 2G2.2(b)(3)(A) provides for at least an increase of five levels, or more depending on the "retail value of the material," "if the offense involved distribution for pecuniary gain." 2G2.2(b)(3)(B), relevant here, provides for a flat five level increase "if the defendant distributed in exchange for any valuable consideration, but not pecuniary gain."

The applicable guideline does not provide a definition for "valuable consideration," however, the application notes do; defining the term as an agreement "to an exchange with

another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child." Setting aside the fact that the definition of "valuable consideration" uses the term within the definition, the term "valuable consideration" is as legally significant term derived from contract law. See generally CONSIDERATION, Black's Law Dictionary (12th ed. 2024): "Loosely, valuable consideration; consideration that is adequate to support the bargained-for exchange between the parties 'his agreement to pay the offering price was good consideration for the sale'". As defined in Black's Law Dictionary, "valuable consideration (17c) means "[c]onsideration that is *valid under the law*; consideration that either confers a *pecuniarily measurable benefit on one party or imposes a pecuniarily measurable detriment on the other*. — Also termed good and valuable consideration; legal consideration. *Id*. In other words, consideration is something that makes the contract enforceable. See e.g. *Earl Dubey & Sons, Inc. v. Macomb Concrete Corp*., 81 Mich. App. 662, 678 (1978) (noting adequate consideration makes a contract legally enforceable on both sides).

However, "valuable consideration" can never be illegal contraband by operation of the Illegality Rule "Ex turpi causa non oritur actio." *McMullen v. Hoffman*, 174 U.S. 639, 654, 19 S. Ct. 839, 845 (1899). In the context of an exchange of illegal or contraband goods, the propriety of importing "valuable consideration" into the criminal sentencing context is dubious. A person cannot provide "consideration that is valid under the law" for an item that is prohibited to be possessed. Such consideration would be definitionally "illegal" or

"immoral" consideration, and therefore void as contrary to public policy, so no consideration at all.

These differences in definitional terms highlight the problem of using legally meaningful terminology within the sentencing guidelines, and then using the application notes to broaden the definition of those terms beyond its plain or historically rooted meaning. Plainly, the sentencing commission could have simply elected to impose an enhanced penalty for any person who trades contraband images with another person, and plainly stated as much, without importing these deeply rooted common law terms and principles, along with the potential definitional issues they raise. Rather, it seems clear that the commission imported the term "valuable consideration" and expanded the definition of to include illicit contraband when the plain meaning of the term would exclude such items. This raises a potential defect under *United States v. Havis*, 927 F.3d 382, 383 (6th Cir. 2019), where the sentencing commission similarly dealt with a definitional problem caused by the sentencing commission expanding the definition within application notes rather than the relevant guideline itself.

By expanding the definition of "valuable consideration" to include "illegal consideration," the sentencing commission has exceeded the bounds set in *United States v. Havis*, 927 F.3d at 386, limiting its use of the application notes to "interpretations of, not additions to, the guidelines themselves." Valuable consideration definitionally cannot include illegal contraband, nor can a contract be formed – via consideration – to achieve an illegal end.

*b. Variance*

Even if the Court rejects this admittedly novel application of the *Havis* holding to the terms at issue here,[2] there are other grounds for sentencing Mr. Coad as if the enhancement did not apply. First, it is clear that the vast majority of internet-based child pornography transfers occur in similar circumstances where individuals trade illegal images with one another. See generally *United States v. Oliver*, 919 F.3d 393, 398 (6th Cir. 2019) (discussing the backdrop of the enhancement in the 2016 Guideline Amendments). Well before the advent and wide adoption of the internet, the Supreme Court and Congress recognized that "“[C]hild pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale." *New York v. Ferber*, 458 U.S. 747, 749 (1982). The internet simply supercharged the existing market for these illegal images. Indeed, as discussed below, The Supreme Court has accepted the unfortunate reality that digital media and easy online transfer have created a "large, loosely connected network through which [child pornography] images circulate" without end. See generally *Paroline v. United States*, 572 U.S. 434, 450 (2014) (discussing the issue of restitution and causation in online child pornography cases).

Indeed, for some time, the ubiquity of online trading of child pornography images has been a recognized if unfortunate feature of the offense. For that reason, for example, the Sixth Circuit noted in the past that "it was hardly unreasonable" for a district court

[2] Defense counsel has found multiple cases assuming the underlying viability of this "valuable consideration" language, which appears to have been broadly accepted without criticism. See generally *United States v. Cato*, No. 22-2116, 2024 U.S. App. LEXIS 5084, at *9 (6th Cir. Mar. 1, 2024).

judge to simply "surmise that Defendant traded child pornography with those persons based on Defendant's extensive personal use of child pornography and his admitted sharing of child pornography with such persons" even in the absence of clear record evidence as to "whether Defendant traded child pornography with other persons." *United States v. Cunningham*, 669 F.3d 723, 732 (6th Cir. 2012). Put another way, four years before the addition of the challenged enhancement, the Sixth Circuit held that the very nature of internet-based child pornography offenses reasonably implied the trading of images, even in the absence of any evidence whatsoever of actual image trading.

This suggests that the enhancement at issue here – the 5-level enhancement that applies if a defendant exchanges images "for nonpecuniary gain," does not meaningfully distinguish between offenders and offenses. If it would "hardly be unreasonable" to assume that every child pornography possessor has traded images in the past with other child pornography possessors, than the enhancement could, under *Cunningham*, reasonably apply to every defendant, or to none of them, with equal support.

Viewed objectively and in light of the above precedent, the only distinguishing characteristic in this case that justifies Mr. Coad receiving a harsher relative sentencing guideline from other similarly situated defendants appears to be his relatively forthright admissions to law enforcement about his own criminal conduct. Naturally, this raises the prospect of Mr. Coad's sentence being unduly harsher than those of defendants who engaged in identical conduct with identical history who simply declined to provide incriminating statements and when no other evidence would otherwise support the enhancement.

Whether phrased as an objection to the application of the enhancement here or as a basis for a sentence outside the guidelines, the Court has ample reason to deviate from the sentencing enhancement here.

*c. Restitution*

Mr. Coad does not object to the legal authority of the Court to order restitution in this case under 18 U.S.C. § 2259 given the binding authority of *Paroline v. United States*, 572 U.S. 434, 463 (2014), as well as his express acknowledgment of restitution contained within his plea agreement. (ECF No. 26, PageID.49[3]). Nor does anything argued below suggest that the defense is seeking to downplay the real consequences faced by victims of child exploitation who have had their victimization memorialized via creation of child pornography.

However, cases such as this – where there is no suggestion that Mr. Coad was the original creator or original distributor of the offending images leading to his conviction - often result in highly generalized and abstracted requests for restitution amounts above the statutory minimum that rarely provide sufficient evidence for the Court to comply with the guardrails set out in *Paroline*. Such is the case with the restitution requests provided here, which spend considerable pages discussing the general effect of child sex crime victimization and the trauma of child pornography creation on its victims but spend little

---

[3] In the defense's view, the dissent authored by Chief Justice Roberts and joined by justices Scalia and Thomas has the better legal argument, *Paroline,* 572 U.S. at 463-472, but it is the dissent.

time discussing how Mr. Coad's individual conduct specifically impacts the identifiable victims.

Under *Paroline*, before a Court may issue a restitution order under 18 U.S.C. § 2259, the victim's losses must be determined to be "proximately caused by the defendant's offense conduct." *Id*., at 443. As the Supreme Court noted, "the difficulty is in determining the 'full amount' of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id*., at 449.

In order to uphold the statute while also providing guidance to district courts for how to ascertain restitution in child pornography cases, the Court set out broad guidance but no bright-line rules:

> District courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images…then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.
>
> *Paroline v. United States*, 572 U.S. 434, 460 (2014)

Turning to the documentation provided to defense counsel in support of the restitution requests set out in ECF No. 34, ¶131, there are several facts that render the Court's restitution order unduly burdensome and difficult to assess beyond the statutory minimum required.

The letter provided on behalf of victim "Lewis" does identify the victim's father as the original creator of the image, excluding Mr. Coad from direct causation liability for restitution. The letter does not provide information to the Court about when the image was created or how often it has been distributed or registered in the NCMEC system. While the letter claims that there are no prior orders of restitution for this image or offenders convicted of possessing it, it is impossible for the court to ascertain the "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses" with the information provided. Perhaps more problematic, the attestations of the costs associated with the treatment are speculative, based largely on the attorney's representations of prior victims in ostensibly similar cases, and not based upon any actual testing or treatment of "Lewis" individually.

The letters accompanying the request for restitution for "John Doe 4" and "John Doe 5" also do not provide the sort of information *Paroline* suggests the Court needs in order to assign an appropriate restitution figure in the individual case. No information about other defendants or basis for "reasonable predictions of the number of future offenders." While both cases provide enumerated bases for loss amounts, both assessments are nearly seven years old, and no information on restitution received to date accompanies the letters. While both victims were apparently related, and related by abuser and circumstances, both

have individualized unrelated comorbidities: John Doe 4 presents with an Intellectual Disability and "many traits of Autism Spectrum Disorder," while John Doe 5 possesses an average IQ of 96 along with a diagnosis of Autism Spectrum Disorder. These significant comorbidities may impact the reasonableness of the provided monetary requests. It is hard to discern from the information provided what services are fairly attributed to the victims' sexual exploitation and reasonably related PTSD, Generalized Anxiety Disorder, and Major Depression, and what can be fairly attributed to his service needs for unrelated congenital conditions. The amount listed for both victims is identical ($1,347,708.00), suggesting that the loss amount is not individualized to the particular needs of the individual victim or expressly related to their underlying victimization.

Regarding "RCA Series – ALEX" and the request for $10,000.00, the accompanying documentation note that "Disturbingly, graphic images documenting these crimes have been disseminated globally." The letter, candidly, expressly highlights the difficulty in assessing many of the *Paroline* factors, but here Mr. Coad's actual volume of possessed images is not extreme or even at the high end of the range of images normally seen in similar cases. The defense has no grounds for disputing the amounts assessed for ongoing treatment of "Alex," and the documentary support appears robust. However, like John Doe 4 and 5 above, there are noted comorbidities that are independent of and predate the sexual abuse related trauma documented in the reports, including Autism Spectrum Disorder.

No one disputes that the victims of child abuse suffer tremendously, or that the victims of child abuse whose images are distributed on the internet are deserving of

sympathy and, to the extent practicable, restored through the restitution order of the Court. Assessing Mr. Coad's level of culpability for possessing images that in many cases are seemingly decades old is a difficult task, particularly under the rubric provided by *Paroline.* The defense suggests that the Court impose the lowest legal restitution amount provided by law, because the provided documents do not explain in any useful fashion how Mr. Coad's specific offense conduct here warrants more.

**3. Section 3553(a) factors**

The government will no doubt point to the risk of recidivism and danger to the community represented in some features of Mr. Coad's offense conduct and prior criminal history when arguing for a relatively harsher sentence. The most salient mitigating factors present in this case involve Mr. Coad's own history of mental health disorders stemming from his own trauma and sexual abuse. Mr. Coad has a history of significant, persistent mental health disorders noted in both the PSR, his prior court records, and in collateral records obtained by counsel. Those collateral records note that Mr. Coad reported he was himself the victim of sexual abuse as a child and has repeatedly struggled with significant depression throughout his life. Sadly, like so many victims of abuse and neglect, Mr. Coad ended up perpetrating the same sort of abuse he endured as a child, and as evidenced in this case fixating on the types of abuse he himself endured.

Drug addiction and instability are also consistent features of Mr. Coad's personal history. As the PSR notes, he has multiple drug-related offenses throughout his 20s, leading to various criminal justice proceedings. Notably, his prior history resulted in competency concerns and substance abuse disorder. (ECF No. 34, ¶ 68-70). However, it appears that

Mr. Coad has remained drug free, and was continuing his education at Grand Rapids Community College at the time of his arrest on related state charges. Notably, in that case he remained on bond from his arrest in October 2025, until the federal indictment in April 2026.

Unusually for someone with his criminal history and status, Mr. Coad has significant support in the community and elsewhere, as evidenced by his letters of support. This suggests that Mr. Coad would have an easier time successfully reintegrating into society upon release from custody.

While of arguably marginal relevance to this case, Mr. Coad's state defense counsel reported that Mr. Coad's likely sentence had the case remained in state court would be significantly lower than his federal advisory guidelines recommend for identical conduct. Additionally, the Court may consider the fact that Mr. Coad's offense of conviction precludes his participation in many recidivism reduction programs that would potentially reduce his overall time spent in the Bureau of Prisons. This means that whatever sentence the Court imposes here will likely result in Mr. Coad serving no less than 85% of the pronounced sentence.

As noted in section 2(a) and 2(b) above, Mr. Coad's sentencing guidelines are primarily driven by the 5-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B). Mr. Coad also receives another sentencing enhancement for "use of a computer" under § 2G2.2(b)(6), and another 5-level enhancement for possessing over 500 images. Each sentencing enhancements are applicable, or potentially applicable, in virtually every modern child pornography case involving possession, receipt, and distribution using the internet.

As such, the guideline section falls afoul of 18 U.S.C. § 3553(a)(6)'s requirement that the imposed sentence avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct. The guideline section itself collapses distinctions by applying enhancements to everyone found guilty of these sorts of offenses. Some courts have noted the problems inherent in this guideline. "The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010). At least one commentator has suggested the guideline section is fundamentally broken. See Brent E. Newton, *A Partial Fix of a Broken Guideline: A Proposed Amendment to Section 2G2.2 of the United States Sentencing Guidelines*, 70 Case W. Res. L. Rev. 53 (2019).

Admittedly, the Sixth Circuit has expressly rejected the critique in other circuits that Congress somehow "overreached" by involving itself in the workings of the sentencing commission, see *United States v. Bistline*, 665 F.3d 758, 762 (6th Cir. 2012). However, it has not – at least to defense counsel's knowledge - addressed the substantive criticisms of the various outdated enhancements that routinely apply in child pornography cases – use of a computer, number of images, even the disputed exchange enhancement. Even a subsequent *Bistline* opinion begrudgingly acknowledged those criticisms as "legitimate so far as they go." *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013). The Sixth Circuit's preference for congressional action does not undermine the ultimate conclusion of many other commentators that § 2G2.2 as currently constructed conflicts with the

statutory provisions the Courts are required to consider at sentencing, namely differentiating between different types of offenders and offenses.

All of this is to say that Mr. Coad's ultimate offense level for distributing child pornography, due to his use of a computer, number of images possessed, and admission to trading images on the internet adds roughly 13 offense level points to his sentencing guidelines calculations. Whether Mr. Coad's individual offense conduct here justifies a harsher penalty than – for example - a person who operates a peer-to-peer file sharing system and possessed thousands of images (*United States v. Hiatt*, No. 25-5923, 2026 U.S. App. LEXIS 13322, at *1 (6th Cir. May 6, 2026) (defendant sentenced to 168 months imprisonment) or a person who "received and shared" child pornography using a peer-to-peer file sharing program and was found in possession of over 3000 images and 2,600 videos of child pornography (*United States v. Robertson*, No. 25-3644, 2026 U.S. App. LEXIS 21227, at *3 (6th Cir. July 17, 2026); ("Guidelines range of 151 to 188 months") is ultimately up to the sound discretion of the Court. However, for all of the reasons listed above, there are sufficient reasons to sentence Mr. Coad to the 15-year mandatory minimum sentence he requests here.

One further issue warrants mentioning here. As noted in the Presentence Report ("PSR"), Mr. Coad has a prior conviction under Michigan Law, M.C.L. § 750.520c, for Criminal Sexual Conduct, 2nd degree. "CSC 2nd". (ECF No. 34, ¶ 75, page 20). The Sixth Circuit has never decided whether CSC 2nd is, or is not, "categorically" such an offense. See *United States v. Freeman*, No. 16-6223, 2017 WL 11841118, at *1 (6th Cir. Sept. 22, 2017), declining to decide the issue. However, other cases suggest that CSC 2nd would

qualify under the less strict categorical approach used for sex offenses, at least as an offense "relating to…sexual abuse or abusive sexual conduct involving a minor or ward." See generally *United States v. Vanbuhler*, 558 F. Supp. 2d 760, 761 (E.D. Mich. 2008) (finding "CSC 4th to be a qualifying offense); *United States v. Sykes*, 65 F.4th 867, 885 (6th Cir. 2023) (discussing the "related to" language found int 2252(b)(2) and its impact on the categorical approach.)

Given the government's plea offer requiring this concession in exchange for full acceptance of responsibility reductions, and the impact of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013) on enhancements like this that increase both the minimum and maximum potential penalties, Mr. Coad would in all likelihood have had to either take his case to a jury trial in order to properly preserve this issue, or minimally proceeded under a bifurcated proceeding prior to the imposition of sentencing. Either option would have reduced or eliminated acceptance of responsibility reductions. Since Mr. Coad ultimately elected to plead guilty to receive the full benefit of accepting responsibility upon the advice of counsel regarding this important issue, he did not raise the issue at or before his change of plea hearing. Indeed, the Court sua sponte raised it.

While this issue does not impact the scoring of Mr. Coad's sentencing guidelines, it does impact the legally available range of penalties that apply in his case, which would be otherwise capped at 240 months. And Mr. Coad's concession was a significant one, raising his statutory maximum penalty from 20 to 40 years, and the minimum to 15. The Court can

and should take this into account when determining the appropriate sentence that should apply here.

**4. Conclusion**

Mr. Coad is 46 years old. Due to his offense of conviction, if the Court adheres to probation's recommended sentence, he will be at least 66 years old upon his release from prison. However, a 15-year sentence would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

SEAN R. TILTON
Federal Public Defender

Dated: October 8, 2026

/s/ James Stevenson Fisher
JAMES STEVENSON FISHER
Senior Litigator
50 Louis, NW, Suite 300
Grand Rapids, Michigan 49503
(616) 742-7420